IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PETER C. ARCHULETA,

    Plaintiff,

v.                                                      Civ. No. 21-346 JB/GBW

KILOLO KIJAKAZI,
*Acting Commissioner of the*
*Social Security Administration*,

    Defendant.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

This matter comes before me pursuant to the Court's Order of Reference (*doc. 18*) and Plaintiff's Motion to Remand or Reverse the Social Security Agency ("SSA") decision to deny Plaintiff Supplemental Security Income ("SSI") and Social Security Disability Insurance ("SSDI"). *Doc. 20*. For the reasons discussed below, I recommend GRANTING Plaintiff's motion, REVERSING the judgment of the SSA, and REMANDING the case to the agency for the reasons herein.

I.    **PROCEDURAL HISTORY**

Plaintiff filed initial protective applications for SSDI and SSI on March 20, 2018, alleging disability beginning March 6, 2018. Administrative Record ("AR") at 15, 275–81. Plaintiff's applications were denied on initial review on November 30, 2018, AR at

1

149–55, and again on reconsideration on May 17, 2019, AR at 158–71. On August 10, 2020, and November 25, 2020, hearings were held by an Administrative Law Judge ("ALJ"). AR at 32–57, 58–74. The ALJ issued an unfavorable decision on January 5, 2021. AR at 15–26. Plaintiff sought review from the Appeals Council, which denied review on March 18, 2021, AR at 1, making the ALJ's denial of the Commissioner's decision final, *see* 20 C.F.R. §§ 404.981, 416.1481, 422.210(a).

On April 15, 2021, Plaintiff filed suit in this Court, seeking review and reversal of the ALJ's decision. *Doc. 1*. On December 22, 2021, Plaintiff filed the instant Motion. *See doc. 20*. Defendant responded on March 24, 2022. *See doc. 25*. Briefing on Plaintiff's Motion was complete on April 12, 2022, *see doc. 28*, with the filing of Plaintiff's reply, *see doc. 29*.

## II. STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the Commissioner only to determine whether it (1) is supported by "substantial evidence" and (2) comports with the proper legal standards. *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800–01 (10th Cir. 1991). "In reviewing the ALJ's decision, we neither reweigh the evidence nor substitute our judgment for that of the agency." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotations omitted).

"Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Casias*, 933 F.3d at 800 (internal quotations omitted). "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Id.* at 1010. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## III. ALJ EVALUATION

### A. LEGAL STANDARD

For purposes of both SSDI and SSI, an individual is disabled when he or she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). To determine whether a person satisfies these criteria, the SSA has developed a five-step test. *See* 20 C.F.R. § 404.1520.[1] If the

---

[1] Plaintiff has applied for both SSDI and SSI benefits. The five-step test for determining disability and other relevant regulations are the same for both benefits, although the test is codified in two separate sections of the Code of Federal Regulations. Part 404 of Title 20 of the Code of Federal Regulations governs SSDI, while Part 416 governs SSI. In the interests of efficiency and judicial economy, the Court only cites to applicable regulations in Part 404 of Title 20 of the Code of Federal Regulations in this Order, but the analogous regulations in Part 416 also apply.

3

Commissioner finds that an individual is disabled at any step, the next step is not taken. *Id*. § 404.1520(a)(4).

At the first four steps of the analysis, the claimant has the burden to show: (1) he is not engaged in "substantial gainful activity;" (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and that either (3) his impairments meet or equal one of the "Listings" of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." *Id.* § 404.1520(a)(4)(i–iv); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

Step four of this analysis consists of three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity ("RFC") in light of "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). A claimant's RFC is "the most [he] can still do despite [physical and mental] limitations." *Id*. § 404.1545(a)(1). Second, the ALJ determines the physical and mental demands of the claimant's past work. *Winfrey*, 92 F.3d at 1024 (citing *Henrie v. U.S. Dep't of Health & Hum. Servs.*, 13 F.3d 359, 361 (10th Cir. 1993)). "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'" *Id.* (quoting Social Security Ruling ("SSR") 82–62, 1982 WL 31386, at *3 (Jan. 1, 1982)). Third, the ALJ

determines whether, in light of the RFC, the claimant is capable of meeting those demands. *Id*. at 1023, 1025.

If the ALJ concludes that the claimant cannot engage in past relevant work, he or she proceeds to step five of the evaluation process. At step five, the burden of proof shifts to the Commissioner to show that the claimant can perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1261.

B.  THE ALJ'S DECISION

On January 5, 2021, the ALJ issued a decision denying Plaintiff's applications for SSDI and SSI. AR at 12, 15. In denying the application, the ALJ applied the five-step sequential analysis. At step one, the ALJ found that Plaintiff had "not engaged in substantial gainful activity since March 6, 2018, the alleged onset date." AR at 17. At step two, he found that Plaintiff "has the following severe impairments: Degenerative Disc Disease, Rheumatoid Arthritis, Obesity, Generalized Anxiety Disorder, and Major Depressive Disorder." *Id*. The ALJ also found that Plaintiff has migraines and hypertension but found these impairments to be non-severe. *Id.* at 18.

At step three, the ALJ found that Plaintiff's severe impairments—both individually and in combination—did not meet or medically equal the severity of Listing 1.02 (dysfunction of the joints), Listing 1.04 (disorders of the spine), Listing 12.04 (depressive, bipolar and related disorders), Listing 12.06 (anxiety and obsessive-

compulsive disorders), or any other impairments in the Listings. AR at 18–20. When assessing whether the Plaintiff's mental impairments met the Paragraph B criteria for mental disorder Listings, the ALJ found that Plaintiff has moderate limitations in four Paragraph B areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing himself. AR at 19–20.

At step four, the ALJ concluded that Plaintiff does not have the RFC to return to his past employment as a medical equipment technician but does have the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), subject to several limitations. AR at 20, 24. Physically, the ALJ found that Plaintiff can sit for six hours in an eight-hour workday; stand or walk for two hours in an eight-hour workday; and perform occasional climbing of ramps or stairs, balance, stoop, kneel, crouch, or crawl. AR at 20. The ALJ further found that Plaintiff should not climb ladders, ropes, or scaffolding, but can perform frequent bilateral grasping, handling, and fine motor manipulation. *Id.* Mentally, the ALJ found that Plaintiff can apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form; deal with problems involving several concrete variables in or from standardized situations; have occasional contact with coworkers and supervisors, and cursory and superficial contact with the general public. *Id.* In doing so, the ALJ did not find the opinions of two state agency consultants to be persuasive based on the fact that their

opinions were not supported by in-person examinations or diagnostic tests, and they had no opportunity to review the entire record. AR at 23. The ALJ further pointed out that "the state agency opinions were inconsistent with physical examinations[.]" *Id.*

At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and determined that Plaintiff can perform jobs that exist in significant numbers in the national economy. AR at 25. Specifically, the ALJ found that Plaintiff can perform the requirements of three representative unskilled occupations involving sedentary work: (1) document preparer (Dictionary of Occupational Tables ("DOT") 249.587-018, 97,000 jobs nationally); optical goods assembler (DOT 713.687-018, 72,00 jobs nationally); and table worker (DOT 739.687-182, 192,000 jobs nationally). AR at 26. Accordingly, the ALJ concluded that Plaintiff was not disabled (as the Social Security Act defines the term) from March 6, 2018, through the date of his decision. *Id.*

## IV. PARTIES' POSITIONS

Plaintiff argues that the ALJ erred in two ways. First, Plaintiff argues that the ALJ erred by not discussing the portion of Dr. Eckert's opinion, a state agency psychologist who provided medical opinions on Plaintiff's mental residual functional capacity (MRFC), in which she opined that Plaintiff "can relate to others on a superficial work basis but not the public." Doc. 21 at 3; *see* AR at 125. Second, Plaintiff argues that the Commissioner did not meet her burden of proof under SSR 00-4p to show that Plaintiff was able to perform work in the national economy because, according to

Plaintiff, the ALJ did not resolve an alleged conflict between the vocational expert's testimony and the ALJ's hypothesized RFC.  *Doc. 21* at 7.

Defendant responds that the ALJ's decision should be affirmed because the ALJ sufficiently discussed Dr. Eckert's medical opinions in dismissing them as unpersuasive and because there was no conflict between the ALJ's RFC and the vocational expert's testimony.  *Doc. 25* at 4, 9.

## V. ANALYSIS

The undersigned agrees with Plaintiff's first argument and so does not reach Plaintiff's second argument.  The ALJ did not adequately explain why Dr. Eckert's opinions on Plaintiff's alleged mental impairments were unpersuasive because he failed to articulate whether Dr. Eckert's opinions—or any of the medical opinions in the record assessing Plaintiff's mental capacities—were consistent with other evidence in the record, as required by 20 C.F.R. § 404.1520c.  The ALJ's failure to explain his reasoning according to those requirements was error which I cannot conclude was harmless, so I recommend reversal and remand.

### A. THE ALJ'S FAILURE TO CONSIDER AND ARTICULATE THE CONSISTENCY OF THE STATE AGENCY CONSULTANTS' MEDICAL OPINIONS ON PLAINTIFF'S MENTAL HEALTH WAS LEGAL ERROR

Under 20 C.F.R. § 404.1520c, the persuasiveness of a medical source's opinions depends on five factors: "supportability; consistency; relationship with the claimant; specialization; and other factors, such as 'a medical source's familiarity with the other

8

evidence in a claim.'" *Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *5 (10th Cir. July 6, 2021) (quoting, *inter alia*, 20 C.F.R. § 404.1520c(c)). As the most important of the five factors, supportability and consistency are the only two that the ALJ must explain when assessing the persuasiveness of a medical source's opinions. 20 C.F.R. § 404.1520c(b)(2). The factor of supportability "examines how closely connected a medical opinion is to the evidence and the medical source's explanations: 'The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions will be.'" *Zhu*, 2021 WL 2794533, at *5 (internal brackets and ellipsis omitted) (quoting, *inter alia*, 20 C.F.R. § 404.1520c(c)(1)). Consistency, by contrast, "compares a medical opinion to the evidence: 'The more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) will be.'" *Id.* (internal ellipsis omitted) (quoting, *inter alia*, 20 C.F.R. § 404.1520c(c)(2)).

When assessing the supportability and consistency of a medical source's opinions, "all the ALJ's required findings must be supported by substantial evidence, and he must consider all relevant medical evidence in making those findings." *Lobato v. Kijakazi*, Civ. No. 21-207 JB/KK, 2022 WL 500395, at *11 (D.N.M. Feb. 18, 2022) (quoting *Grogan*, 399 F.3d at 1262). The ALJ also cannot "pick and choose among medical reports," using only portions of evidence that are favorable to his position and

9

disregarding those that are not. *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004). This requirement, however, does not mean that the ALJ must discuss every piece of controverted evidence. *See Clifton*, 79 F.3d at 1009–10. Rather, the ALJ must merely show that he considered evidence unfavorable to his findings before making them. *See id.* at 1010. When the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

The state agency produced two MRFCs—one on initial consideration, the other on reconsideration. On initial consideration, Dr. Cynthia Kampschaefer assessed Plaintiff's alleged mental impairments on September 20, 2018. *See* AR at 89. Dr. Kampschaefer found that Plaintiff was moderately limited in his ability to carry out detailed instructions and in his ability to interact appropriately with the general public. AR at 88–89. In all other respects, Dr. Kampschaefer assessed that Plaintiff was not significantly limited in his mental functional capacities. AR at 87–89. She further stated in her additional explanation of Plaintiff's MRFC that Plaintiff could "perform simple and some complex tasks," "relate to others on a superficial work basis," and "adapt to a work situation." AR at 89.

Plaintiff's MRFC on reconsideration indicated considerably greater limitations. On May 9, 2019, Dr. Laura Eckert performed Plaintiff's reconsideration MRFC

assessment.  *See* AR at 125.  She found that Plaintiff was markedly limited in his ability to interact appropriately with the general public.  AR at 124.  Whereas Dr. Kampschaefer found moderate limitations in two abilities, Dr. Eckert found that Plaintiff was moderately limited in nine listed abilities.[2]  AR at 123–25.  Dr. Eckert additionally found that Plaintiff could "perform simple and some detailed *but not complex* tasks," "relate to others on a superficial work basis *but not the public*," and "adapt to a work situation *with forewarning*."  AR at 125 (emphasis added).

The ALJ briefly acknowledged the conflicting mental impairment assessments from Dr. Kampschaefer and Dr. Eckert in his opinion.  AR at 23.  However, he proceeded to reject both of these assessments stating that he "did not find the state agency opinions to be persuasive."  *Id.*  Therefore, as relevant here, the ALJ found unpersuasive Dr. Eckert's assessment that Plaintiff could "relate to others on a superficial work basis *but not the public*[.]"  AR at 125.  The ALJ's only basis for the rejection of Dr. Eckert's conclusion on this characteristic was blended with the

---

[2] Dr. Eckert found moderate limitations in the following abilities: understanding and remembering detailed instructions; carrying out detailed instructions; maintaining attention and concentration for extended periods; working in coordination with or in proximity to others without being distracted by them; completing a normal workday or workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; accepting instructions and responding appropriately to criticism from supervisors; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; responding appropriately to changes in the work setting; and traveling to unfamiliar places or using public transportation. AR at 124–25. Dr. Eckert and Dr. Kampschaefer agreed that Plaintiff was moderately limited in his ability to carry out detailed instructions and that Plaintiff was not insignificantly limited in his ability to interact appropriately with the general public.  *See* AR at 88, 124.

justification for broadly rejecting Dr. Kampschaefer and Dr. Eckert's opinions: that "the state agency consultants did not support their opinion with an in-person examination of the claimant, nor did they order diagnostic tests or have the opportunity to review the entire record. In addition, the state agency opinions were inconsistent with physical examinations showing significantly elevated body mass index and joint pain that made ambulation and fine manipulation difficult." AR at 23.

   This explanation is insufficient under the regulations. Most obviously, the explanation does not discuss whether these assessments were consistent with other evidence as required by 20 C.F.R. § 404.1520c. While the ALJ is not required to address every aspect of a medical opinion, he is required to address whether the medical opinion is supported by and consistent with other evidence. *See* 20 C.F.R. § 404.1520c(b)(2). Although the ALJ's explanation for disregarding all state agency consultants' opinions references the concepts of "supportability" and "consistency," the explanation does not address whether the state agency opinions on Plaintiff's mental impairments were consistent with other evidence. *See* AR at 23. The sentence addressing consistency only addresses information relevant to physical impairments, such as Plaintiff's body mass index and joint pain. *Id.* Nothing in the relevant paragraph shows that the ALJ considered or addressed whether the state agency MRFCs were consistent with other evidence in the claim. *See id.*

This error matters because physical limitations and mental limitations are materially different and consistency findings about each type of limitation must be supported by substantial evidence. *See Casias*, 933 F.2d at 800–01. The evidence necessary to support a finding of a physical limitation differs from the evidence necessary to support a finding of a mental limitation. *See* 20 C.F.R. § 404.1545(b), (c) (explaining what the SSA considers in determining claimants' physical and mental abilities). For example, an ALJ's explanation of how a claimant's body mass index and joint pain affect that claimant's ability to ambulate and engage in fine manipulative tasks generally says nothing about how that claimant's mental impairments will affect the claimant's ability to work. Thus, a consistency finding about a claimant's physical limitations is not sufficient to discharge the ALJ's duty to make consistency findings about the claimant's mental limitations. *Cf. Shivel v. Astrue*, 260 F. App'x 88, 90–91 (10th Cir. 2008) (holding that, in a case where the ALJ's findings on the claimant's physical limitations were supported by substantial evidence and sufficiently explained, the ALJ's decision required reversal and remand because the ALJ's findings on the claimant's mental limitations were supported by no evidence and no explanation).

The ALJ's omission was not merely technical. Because the ALJ failed to explain his reasoning according to the applicable legal standards, it is impossible for the reviewing court to determine whether the ALJ's findings on Plaintiff's mental limitations are supported by substantial evidence. *See Keyes-Zachary*, 695 F.3d at 1166.

The ALJ's failure to articulate whether Dr. Eckert's opinion regarding interaction with the public was consistent with other evidence is error.  *See Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citing *Winfrey*, 92 F.3d at 1019); *see also Trujillo v. Colvin*, 626 F. App'x 749, 751 (10th Cir. 2015) (holding that an ALJ's failure to address a psychologist's testimony that the claimant was markedly limited in two respects affecting claimant's ability to work was a failure to follow the legal standards established in *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) requiring the ALJ to "discuss . . . the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects," and that this omission was reversible error).

    B.    THE "SLIGHT DIFFERENCE" BETWEEN DR. ECKERT'S MRFC AND THE ALJ'S MFRC DOES NOT CHANGE THE RESULT IN THIS CASE

The ALJ's MRFC states that Plaintiff "can have occasional contact with coworkers and supervisors, and *cursory and superficial contact with the general public*." AR at 20 (emphasis added).  By contrast, Dr. Eckert's MRFC states that Plaintiff can "relate to others on a superficial work basis *but not the public*."  AR at 125 (emphasis added). Commissioner asserts that "the ALJ's RFC is only slightly different than that of Dr. Eckert's finding" and that this similarity should weigh in favor of ruling for the Commissioner.  *Doc 25* at 5–6.  Essentially, the Commissioner is arguing that any error should be considered harmless.

Assuming that the ALJ's failure to explain his rejection of Dr. Eckert's opinion is subject to a harmless error analysis, I cannot reach that conclusion based on the record

14

before the Court.  *See, e.g. M.R.D. v. Kijakazi*, 2022 WL 123862, No. 20-703, at *12 (D.N.M. Jan. 13, 2022) (finding that the ALJ's failure to find a marked limitation at step two of the five-step analysis was harmless error because a single marked limitation finding would have still meant that Plaintiff was not disabled under 20 C.F.R. § 416.926a(a)). The ALJ's MRFC allowed Plaintiff to have contact with the public while working even though following Dr. Eckert's findings would have resulted in an MFRC in which Plaintiff would have been allowed no contact with the public.  Every job listed in the DOT "requires a worker to function to some degree in relation to data, *people*, and things."  U.S. Dep't of Lab., 1 Dictionary of Occupational Tables xix (4th ed. Revised 1991), 1991 WL 645965 (database updated Jan. 1, 2016) (emphasis added).  The record does not reflect how many jobs Plaintiff would have been able to perform if no public contact were involved, let alone whether those jobs exist in sufficient numbers in the national economy.  Without that information, I cannot conclude that the ALJ's error was harmless.

## VI.  CONCLUSION

For the foregoing reasons, the undersigned finds that the ALJ committed reversible error.  Therefore, I recommend that the Court GRANT Plaintiff's Motion to Remand or Reverse Agency Decision (*doc. 20*), REVERSE the Commissioner's decision, and REMAND the case for further proceedings not inconsistent with these proposed findings and recommendations.

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**